CARAWAY, J.
1! After an unsuccessful attempt to enjoin the execution of a money judgment by his judgment creditor, appellant filed this summary proceeding seeking a determination of the payoff of the judgment debt and tendering into the court registry an amount of money far less than the amount of the judgment. The trial court denied relief and appellant appeals. Finding no cause of action and a frivolous appeal, we amend the trial court’s judgment which denied appellant’s claims, dismiss the action, and award attorney’s fees to appellee.

Facts

Appellant, Woodrow Nesbitt, Jr. (“Nes-bitt”), and appellee, Annette Pittman, formerly Annette Nesbitt (“Pittman”), were married in 1968 and divorced on June 14, 2002. After the parties entered into a partial voluntary partition of community property, several disputes arose between them involving the partition of the remaining community property. These disputes have been the subject of two prior rulings of this court. Nesbitt v. Nesbitt, 40,442 (La.App.2d Cir.1/13/06), 920 So.2d 326, writ denied, 06-0720 (La.6/2/06), 929 So.2d 1255; Nesbitt v. Nesbitt, 44,413 (La.App.2d Cir.6/24/09), 15 So.3d 1229, writs denied, 09-1649, 09-1729 (La.10/16/09), 19 So.3d 483, 484 (hereafter referenced as Nesbitt II).
In the parties’ last appeal, Nesbitt II, this court allocated all of the community assets and reimbursements owed to each party. As the result of Nesbitt II, Nesbitt received an allocation of all of the remaining disputed |gassets since they involved his employment as a lawyer and his personal wine collection. Those assets and their established values were:
Wine collection $309,085.00
Campaign funds $ 92,210.57
PLC, law firm $173,765.84
Retirement $ 11,400.00
Total Amount $586,461.41
As noted in the final judgment, Pittman was entitled to an equalizing payment of one-half that value, or $293,231.76.
Next, the partition judgment of the district court as recast and amended in Nes-bitt II can be summarized for the total reimbursements, including the equalizing payment, as follows:

Reimbursements to Nesbitt

Two months’ rent $ 4,600.00
Mortgage payments $ 3,839.00
Judgment from prior accident $127,146.27
His ½ share of the money giv- $ 23,700.00 en to the community property regime from the sale of his separate property
Total Amount $159,285.27

Reimbursements to Pittman

Her ½ share of all community $293,231.76 assets
Electric Bills $ 743.16
Money Advanced to PLC $ 5,443.26
Damages By Nesbitt to Com- $ 40,000.00 munity House
½ of the campaign debt owed to $145,150.00 Bancorp that was secured by the community
Total Amount $484,568.18
*350 Thus, by subtracting the reimbursements owed to Nesbitt from those owed to Pittman, Nesbitt owed Pittman $325,282.91 under the prior judgment.
In addition to the $325,282.91 owed to Pittman, the Nesbitt II judgment went further in its ruling and granted Pittman a lien to secure this | ¡¿judgment. Upon any default by Nesbitt, Pittman was given the right to enforce a lien against any property necessary to:
“effectuate said equalizing payment to plaintiff. Should there be a deficiency, the collection of the lien shall first apply to the wine collection, then the defendant’s share of the community and finally to the separate property of B. Woodrow Nesbitt, Jr.”
Nesbitt II at 1235.
After the Nesbitt II judgment became final, Nesbitt instituted the following proceedings challenging Pittman’s actions in execution on the judgment. First, due to Nesbitt’s failure to satisfy the judgment, Pittman obtained a writ of fieri facias to seize the wine collection. On August 25, 2010, Nesbitt filed a rule for injunctive relief to stop Pittman from seizing the wine. As to the exceptions, Nesbitt argued that the issues of the wine’s value and his use of the wine ‘as cash’ to satisfy any deficiency were res judicata as a result of Nesbitt II. Asserting the law of the case, Nesbitt believed Pittman’s actions were contrary to the prior rulings. In his rule to show cause, Nesbitt argued that the proper procedure for Pittman’s action was under a writ of sequestration rather than a writ of fieri facias and that the value of wine as determined in Nesbitt II would remain constant for the execution of Pittman’s judgment.
In the arguments over Nesbitt’s action for injunction, both parties submitted calculations of the total amount that they believed was owed to Pittman. Nesbitt’s calculations showed that he only owed $22,607.96 while Pittman determined the total amount was $325,282.91.
On September 24, 2010, the trial court upheld Pittman’s action to seize the wine collection under a writ of fieri facias and denied all of | ¿Nesbitt’s requests for relief, including his request for injunctive relief. Importantly, the trial court denied Nes-bitt’s argument that he only owes $22,607.96. Additionally, the trial court listed the relevant reimbursements for each party, and by simply adding these amounts and then subtracting the reimbursements owed to Nesbitt, the total payoff of $325,282.91 was clearly reflected in the trial court’s ruling.
The trial court went further in its decision and noted that the lien was granted in Nesbitt II to secure the judgment. When Nesbitt defaulted on the judgment, Pittman was entitled to and did properly seize the wine collection under a writ of fieri facias. While Nesbitt filed a notice of intention to file a supervisory writ, he did not appeal the denial of injunctive relief.
Despite the September 24 ruling denying injunctive relief, Nesbitt next filed a rule on October 18, 2010, entitled “Rule to Determine Payoff of Judgment Rendered September 24, 2010 by Second Circuit Court of Appeal, Recognition of Amount Deposited by B. Woodrow Nesbitt, Jr., as a Payoff Completely Pays the Judgment of June 24, 2009, or Determination of What Amount is Needed to Payoff the Judgment.” This summary proceeding was accompanied by Nesbitt’s payment of $24,901.11, which he deposited into the court as an alleged satisfaction of his debt. In the alternative, Nesbitt sought a declaration of how much was needed to pay off the judgment. Nesbitt’s rule calculates the $24,901.11 in the same way as that previously rejected by the trial court in its *351 September judgment, the only difference being the addition of judicial interest. On October 22, 2010, the trial court ordered Pittman to file a detailed itemization of her ^^reimbursements, computation and payoff calculations. After receiving submissions from both parties regarding the amount owed by Nesbitt, the trial court merely attached the Nesbitt II holding and rendered judgment that Nesbitt owed $325,282.91 plus interest.
From this ruling, Nesbitt appeals. He seeks a declaration that he owes $22,607.96 plus legal interest under the Nesbitt II judgment and that the judgment “can be paid in wine or the money as placed into the registry of the court.” The appellee requests that the court hold that the appeal is frivolous.

Discussion

Using the form of the trial court’s original judgment of partition, this court at the conclusion of its opinion in Nesbitt II recast that judgment with a partial amendment. Nesbitt II at 1234-1236. Regarding the judgment’s provisions for reimbursements owed by the spouses, the judgment was for the payment of money, i.e. a money judgment. The offsetting effect of those reimbursements was that Nesbitt was to pay to Pittman more than the reimbursement she owed to him so that he became the judgment debtor for a money judgment. In Succession of Jenkins, 41,202 (La.App.2d Cir.7/26/06), 936 So.2d 268, 271, this court set forth the law regarding the definitive nature of a money judgment as follows:
The specific nature and amount of damages should be determinable from a judgment without reference to an extrinsic source such as pleadings or reasons for judgment. Security Nat. Partners, Limited Partnership v. Baxley, 37,747 (La.App.2d Cir.10/29/03), 859 So.2d 890. As our supreme court held a century ago in Fontelieu v. Fontelieu, 116 La. 866, 41 So. 120, 125 (1906):
[fi[I]f a judgment purports to be final and is given upon a money demand, the amount of the recovery must be stated in it with certainty and precision. If the amount remains to be determined by a future contingency, or ascertained by references, or diminished by the allowance of an unliquidated credit, or is otherwise indefinite and uncertain, it is no proper judgment.
In Nesbitt II, no argument was presented challenging as indefinite, uncertain, or incalculable, the money judgment for the partition reimbursements. When the Nes-bitt II judgment became final, therefore, Nesbitt was a judgment debtor under a definitive money judgment. We see nothing in our judgment of Nesbitt II that makes it uncertain or incalculable as a money judgment against Nesbitt.
The next phase for civil procedure concerns the execution of the judgment by the judgment creditor. Pursuant to La. C.C.P. art. 2291[1] and the special directive of the Nesbitt II judgment, Pittman began execution on her money judgment by directing the seizure and sale of Nesbitt’s wine by a writ of fieri facias. While Nes-bitt attempted to enjoin the execution of the judgment pursuant to La. C.C.P. art. 2298, that summary procedure was denied him by the trial court’s first ruling in this matter on September 24, 2010. That denial of relief is now a final judgment, and Pittman is at liberty to obtain payment of her judgment by the seizure and sale of the wine.
*352 The next proceeding instituted by Nes-bitt is the action now before us. The action tenders an “unconditional” payment on Pittman’s money judgment into the court’s registry and seeks declaratory judgment relief concerning the amount of Nesbitt’s obligation as a judgment debtor. This |7summary proceeding is not a procedure recognized in Book IV of the Code of Civil Procedure for the execution of judgments. It presupposes that Pittman will neither obtain satisfaction of the judgment through her pending seizure of the wine nor simply choose to forgive the debt. Under the applicable procedure for the execution of the judgment, it is the judgment creditor’s choice of action for collection of her debt. Yet, Nesbitt’s filing of the present rule to show cause preempts the process. Moreover, falling on the heels of Nesbitt’s unsuccessful injunction action, the present action asserts essentially the same claims again to the trial court.
A summary proceeding, like an ordinary action, is subject to a peremptory exception. La. C.C.P. arts. 2593 and 2595. The pertinent question in reviewing an exception of no cause of action is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiffs behalf, the petition states any valid cause of action for relief. Ramey v. DeCaire, 03-1299 (La.3/19/04), 869 So.2d 114.
While the peremptory exception of no cause of action has not been raised and addressed on appeal by the parties, this court may notice and determine whether the present rule to show cause states a cause of action. La. C.C.P. art. 927(B).
Once a writ of fieri facias has been obtained, La. C.C.P. art. 2291, et seq., procedure articles control the rights and possible actions of both the judgment debtor and creditor. The judgment debtor’s primary defense is injunctive relief, and La. C.C.P. art. 2298 provides, in pertinent part:
Injunctive relief prohibiting the sheriff from proceeding with the sale of property seized under a writ of fieri facias shall be granted to the 1 ¿judgment debtor or to a third person claiming ownership of the seized property:
(2) When subsequent to the judgment payment has been made, or compensation has taken place against the judgment, or it has been otherwise extinguished. If the payment, compensation, or extinguishment is for a part of the judgment, the injunction shall be granted to that extent, and the execution shall continue for the amount of the excess.
Nesbitt’s rule to show cause does not seek injunctive relief. It does not assert that the judgment has been extinguished. The pleading asserts that the total amount of the money judgment reflected in Nesbitt II was not a definitive money judgment for $325,282.91. We find that the judgment was a definitive final judgment. Thus, from this consideration of Nesbitt’s claims, we find that his action shall be dismissed on the peremptory exception of no cause of action.

Frivolous Appeal

The appellee requests in her brief that Nesbitt receive sanctions for this frivolous appeal and bear her attorney’s fees. She did not answer the appeal. La. C.C.P. art. 2133 states that “an appellee shall not be obliged to answer the appeal ... unless he demands damages against the appellant.” Additionally, La. C.C.P. art. 2164 states that:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part *353 thereof, against any party to the suit, as in its judgment may be considered equitable.
Article 2164 grants the appellate court the authority to address the issue of frivolous appeal from the proceedings conducted before it. The award of damages and attorney's fees for frivolous appeal, like sanctions at |flthe trial court level, are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law. Johnson v. Johnson, 08-0060 (La.App.4th Cir.5/28/08), 986 So.2d 797.
Although an appeal or answer to the appeal is required for appellate review and modification of the trial court’s award of damages, the issue of frivolous appeal first arises at the appellate court level and therefore may be adjudicated and remedied by this court. The jurisprudence has also determined that when an issue of attorney’s fees is present in the case, it is within the appellate court’s discretion to award or increase attorney’s fees for the expense of the appeal regardless of whether the appellee answered the appeal. La. C.C.P. art. 2164; Gandy v. United Services Auto Assoc., 97-1095 (La.App.5th Cir.10/14/98), 721 So.2d 34; Smith v. Pilgrim’s Pride Corp., 44,080 (La.App.2d Cir.2/25/09), 4 So.3d 983, writ denied, 09-0961 (La.6/19/09), 10 So.3d 739. Factors considered in determining the amount of attorney’s fees include the skill exercised by the attorney and the time and work required on appeal. Lewis v. Chateau D’Arbonne Nurse Care Center, 38,394 (La.App.2d Cir.4/7/04), 870 So.2d 515, as cited in Smith, supra.
In this case, Nesbitt filed the current rule in the trial court less than a month after he was denied injunctive relief. His present pleading states no cause of action and was repetitive of his prior assertions. Accordingly, we find this appeal frivolous. The appellee shall therefore be awarded $2,500 in attorney’s fees.
| m Conclusion
For the foregoing reasons, the judgment of the trial court denying appellant relief is amended reflecting the dismissal of the action on the peremptory exception of no cause of action. We also find the appeal to be frivolous and award the appellee $2,500 in attorney’s fees. Costs of this appeal are assessed to appellant.
JUDGMENT AMENDED; AS AMENDED CASE DISMISSED.

. La. C.C.P. art. 2291 provides: A judgment for the payment of money may be executed by a writ of fieri facias directing the seizure and sale of property of the judgment debtor.